COPY

1  DAVID PETTIT (SBN 67128)
2  dpettit@nrdc.org
   MELISSA LIN PERRELLA (SBN 205019)
3  mlinperrella@nrdc.org
4  MORGAN WYENN (SBN 270593)
   mwyenn@nrdc.org
5  NATURAL RESOURCES DEFENSE COUNCIL, INC.
6  1314 Second Street
   Santa Monica, California 90401
7  Telephone:  (310) 434-2300
8  Facsimile:  (310) 434-2399

9
   Attorneys for Plaintiffs Center for Community
10 Action & Environmental Justice, East Yard
11 Communities for Environmental Justice, and
   Natural Resources Defense Council, Inc.
12

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2011 OCT 18  AM 11: 44
BY
FILED

13           UNITED STATES DISTRICT COURT
14        FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16 CENTER FOR COMMUNITY ACTION &        Case No. **CV11-8608-SJO**
   ENVIRONMENTAL JUSTICE, EAST          **(SSx)**
17 YARD COMMUNITIES FOR
18 ENVIRONMENTAL JUSTICE, AND           **COMPLAINT FOR**
   NATURAL RESOURCES DEFENSE            **DECLARATORY AND**
19 COUNCIL, INC.,                       **INJUNCTIVE RELIEF**
                                        **[RCRA, 42 U.S.C §§ 6901 et seq]**
20
                Plaintiffs,
21
        v.
22

23 UNION PACIFIC CORPORATION,
24 BURLINGTON NORTHERN SANTA FE,
   LLC, AND BNSF RAILWAY COMPANY,
25

26              Defendants,

27 ────────────────────────────────

28


           COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**INTRODUCTION**

1.      This case is brought to abate deadly diesel particulate pollution that is spewing from sixteen railyards located throughout California.  These railyards are owned and operated by Defendants and are not regulated by any State or Federal agency.  People living near these railyards, including members of Plaintiffs' organizations, are in imminent and substantial danger of increased cancer risk, asthma, reduced lung function and other cardiovascular ailments, all as a result of the railyards' diesel particulate pollution.

2.      Diesel pollution in the form of diesel particulate matter (DPM) is created by these railyards by the operation on and near their property of diesel-engined locomotives, trucks and other vehicles and equipment which emit DPM into the air.  DPM is comprised of solid particles that are part of the exhaust from diesel engines.  DPM from the railyards is transported by wind and air currents onto the land and water near the railyards, and is inhaled by people both directly and after the particles have fallen to the earth and then have been re-entrained into the air by wind, air currents and passing vehicles.

3.      In 1998, California identified DPM as a toxic air contaminant based on its potential to cause cancer, premature death, and other health problems.  The United States Environmental Protection Agency (EPA) classifies diesel exhaust as likely to be carcinogenic to humans.

4.      The California Air Resources Board (CARB) has failed to regulate the railroads that own and operate the railyards in question in this action.  Voluntary agreements between CARB and Defendants, and EPA regulations have failed to ameliorate the DPM pollution from the railyards to health protective levels.  And, these Defendants are proposing to build one huge new railyard and expand another in a heavily-polluted and densely populated area near the Port of Los Angeles.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a), and the federal question statute, 28 U.S.C. § 1331.  This action arises under RCRA, 42 U.S.C. § 6901 *et seq*.  The Court may award Plaintiffs all necessary injunctive relief pursuant to RCRA, 42 U.S.C. § 6972(a), and may award declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

6.     Pursuant to 42 U.S.C. § 6972(b)(2)(A), Plaintiffs gave notice of the endangerment to the Administrator of the EPA, the EPA Regional Administrator for the region encompassing this judicial district, the Acting Director of the California Department of Toxic Substances Control, and Defendants.  A copy of Plaintiffs' notice letter, dated June 21, 2011, is attached hereto as Exhibit A and incorporated herein by reference

7.     Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district, and some of the railyard property owned and operated by Defendants is in this judicial district.  Venue is also proper under RCRA, 42 U.S.C. §6972(a), because a substantial part of the alleged endangerment occurred or may occur in this judicial district.

## PARTIES

8.     Plaintiff Center for Community Action and Environmental Justice (CCAEJ) is one of the oldest and most accomplished environmental health and justice organizations in the nation with its beginning in 1978 as a neighborhood group fighting to stop exposures from the notorious Stringfellow Acid Pits, California's top priority Superfund Site.  CCAEJ incorporated as a nonprofit in 1993 to serve communities in Riverside and San Bernardino Counties that are disproportionately affected by environmental factors that impair and threaten their

1    health and quality of life.  The mission of CCAEJ is "to bring people together to

2    improve our social and natural environment."

3         9.    CCAEJ's work focuses on improving the quality of life for people in

4    the Riverside/San Bernardino region of southern California, an area covering more

5    than 30,000 square miles with a population of over 4.1 million.  The Inland Valley

6    represents one of the fastest growing regions of the state, representing 11 percent

7    of California's total population.  CCAEJ is the only environmental health and

8    justice organization in this vast region focusing on the communities most affected

9    by environmental health hazards--low-income communities of color and recent

10   immigrants, who live, work, learn and play closest to railyards, industrial areas,

11   toxic waste facilities, intermodal facilities, freeways and other areas at greatest risk

12   for environmental health hazards.

13        10.   Two communities stand out as the most heavily affected in this

14   region.  They are the Westside of the City of San Bernardino and the combined

15   communities of Glen Avon/Mira Loma in Riverside County.   Each is noted for

16   having high pollution levels:  Mira Loma/Glen Avon have the highest levels of

17   particulate pollution in the South Coast Air Basin, and San Bernardino has the

18   highest ozone levels in the state.   The Children's Health Study conducted by

19   researchers at USC's Keck School of Medicine have identified the children of this

20   area as having the slowest lung growth and weakest lung capacity of all children

21   studied in southern California.   A recent Health Risk Assessment conducted by the

22   California Air Resources Board found the Westside to have the highest cancer risk

23   from railyard pollution of all communities studied in the state at 3,300 per million.

24   Both communities have high levels of poverty and are predominantly Latino and

25   immigrants.  Both play host to railyards:   the BNSF Intermodal facility in San

26   Bernardino and the Union Pacific Auto Distribution Center in Mira Loma.

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

11.     Many CCAEJ members live close to the BNSF intermodal facility in San Bernardino and the Union Pacific facility in Mira Loma, and the health of these people is impaired by these railyards.

12.     Plaintiff East Yard Communities for Environmental Justice (EYCEJ) is an environmental health and justice organization working towards a safe and healthy environment for communities that are disproportionately suffering the negative effects of industrial pollution.  The organization recognizes and promotes full and authentic community participation in influencing policies that affect them directly and promotes the implementation of environmental justice guidelines for local, state and federal governments and agencies, as well as industry.

13.     Long Beach and the Commerce/East Los Angeles area, where EYCEJ's membership base is located, has clusters of neighborhoods composed predominantly of persons of color that are subjected to a disproportionate burden of many different environmental hazards which, taken cumulatively, have a profound negative impact and significantly reduce the quality of life.  Major rail yards are located in both Long Beach and the East LA area.  The ICTF/Dolores yard is located adjacent to Long Beach, and the UP Commerce, BNSF Hobart, BNSF Commerce, and BNSF Sheila yards are located in the Commerce/ East LA area.  EYCAJ's membership based in both these areas are exposed to high levels of diesel exhaust from the transportation of goods.

14.     In 2007, CARB estimated that 597,500 people that live around the ICTF/Dolores yard are at risk of cancer (at least by 10 in 1 million, and at most 1,200 in 1 million from the 23.7 tons of DPM the yard produces each year).  In the East LA area, the four Commerce railyards put 1,285,200 people at risk of cancer (with the maximum impact of 3,000 in 1 million cancer risk).

15.     In the Long Beach zip code of 90810 (closest to the ICTF yard), with a total population of 35,637 residents, the population data is as follows:  89.1% are people of color, 17.7% of the families are below the poverty line, and 21.1 % of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the individuals are below the poverty line.  In the East LA area, specifically the City of Commerce in the 90040 zip code (with a total population of 9,790), the population data is as follows:  96.9% are people of color, 14.5% of the families are below the poverty line, and 15.8% of the individuals are below the poverty line.

16.    Many EYCEJ  members live close to the BNSF and UP intermodal facilities in and near Commerce and Long Beach, and the health of these people is impaired by these railyards.

17.    Plaintiff Natural Resources Defense Council (NRDC) is a not for profit membership corporation founded in 1970 and organized under the laws of the State of New York.  NRDC maintains offices in New York, NY; Washington, D.C.; Chicago, IL; San Francisco and Santa Monica, CA; and Beijing, China. NRDC has more than 420,000 members nationwide, including more than 63,000 members who live in California.  NRDC's purposes include the preservation, protection and defense of the environment, public health, and natural resources. For 40 years, NRDC has engaged in scientific analysis, public education, advocacy, and litigation on a wide range of environmental and health issues. NRDC has long been active in efforts to reduce the threats to human health and the environment from DPM emitted by railyards, ports, distribution centers and other facilities.

18.    Members of NRDC live in Long Beach, City of Industry, San Pedro, Commerce,  San Bernardino, Carson, Oakland, Richmond, Roseville, Stockton, Mira Loma, and Barstow, where BNSF or UP intermodal facilities are located. The health of many of these members is impaired by Defendants' railyards.

19.    Defendant Union Pacific Corporation (UP) operates a railroad in 23 states, including California.  UP owns and operates railyards in the following locations in California:  UP Dolores/ICTF, UP Commerce, UP Roseville, UP Oakland, UP LATC, UP Colton, UP Industry, UP Stockton, and UP Mira Loma. DPM emitted from these railyards, individually and collectively, has caused and is

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  causing an imminent and substantial risk to humans and to the environment in the
2  vicinity of the railyards.

3       20.     Defendants Burlington Northern Santa Fe, LLC, and BNSF Railway
4  Company (collectively, BNSF) operate a railroad in 28 states, including California.
5  BNSF owns and operates railyards in the following locations in California:  BNSF
6  Hobart, BNSF San Bernardino, BNSF Commerce, BNSF Stockton, BNSF Watson,
7  BNSF Richmond, and BNSF Barstow.  DPM emitted from these railyards,
8  individually and collectively, has caused and is causing an imminent and
9  substantial risk to humans and to the environment in the vicinity of the railyards.

10  **FACTUAL BACKGROUND**

11  **A.     Diesel Particulate Matter Is Dangerous To Human Health.**

12       21.     The dangers to human health of diesel particulate emissions are well-
13  documented, by CARB and others.  In its Goods Movement Emissions Reduction
14  Plan, CARB stated that goods movement-related air pollution can increase all-
15  cause mortality, cardiopulmonary mortality and lung cancer mortality in adults,
16  infant mortality, hospital admissions for all pulmonary illnesses, chronic
17  obstructive pulmonary disease, pneumonia, asthma, and all cardiovascular
18  illnesses.  It can also contribute to pre-term births and lower birth weight.
19  Sensitive groups, including children and infants, the elderly, and people with heart
20  or lung disease, can be at increased risk of experiencing harmful effects from
21  exposure to diesel air pollution.  CARB also found that people living in
22  communities close to the source of goods movement-related emissions, such as
23  ports, railyards and intermodal transfer facilities are likely to suffer greater health
24  impacts and these impacts will likely add to an existing health burden.  CARB
25  noted that studies have shown associations between traffic-related pollution and
26  effects in children, including chronic bronchitis symptoms, wheeze, cough, allergic
27  rhinitis, asthma induction, and upper and lower respiratory tract infections.  Recent
28  evidence indicates that diesel air pollution exposure can impair lung function

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

growth in children. The long-term consequences of lower lung function can include shorter lifespan, as lung function peaks in young adulthood and declines thereafter; lung function is the most significant predictor of mortality in the elderly.

22.   There are also other exposure pathways to DPM, including dermal contact and the eating of contaminated food.  CARB found that:

> Communities surrounding many goods movement-related facilities where there may be a disproportionate exposure to air pollutants are often economically disadvantaged or ethnically or culturally diverse. People in these communities often have poor access to health care or carry a disease burden that may make them more susceptible to excess exposure. Their housing characteristics may contribute to this susceptibility.

> Cumulative impacts are very likely to be experienced by communities living in close proximity to goods movement-related activity. Airborne pollutants can deposit onto surfaces and waterways, providing another source of exposure. For example, goods movement activities contribute to non-point source runoff that contaminates coastal and bay waters with a number of toxicants, including PAHs, dioxins, and metals. Exposures to pollutants that were originally emitted into the air can also occur as a result of dermal contact, ingestion of contaminated produce, and ingestion of fish that have taken up contaminants from water bodies. These exposures can all contribute to an individual's health risk. In some cases, the risks from these kinds of exposure can be greater than the risks from inhalation of the airborne chemicals.

23.   EPA Region 1 has stated that:  "Diesel exhaust causes health effects from both short term or acute exposures and also long term chronic exposures, such as repeated occupational exposures. The type and severity of health effects depends upon several factors including the amount of chemical you are exposed to and the length of time you are exposed. Individuals also react differently to different levels of exposure. There is limited information on exposure to just diesel particulate matter but there is enough evidence to indicate that inhalation exposure to diesel exhaust causes acute and chronic health effects."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

24.     EPA has also stated that: "Acute exposure to diesel exhaust may cause irritation to the eyes, nose, throat and lungs, [and] some neurological effects such as lightheadedness. Acute exposure may also elicit a cough or nausea as well as exacerbate asthma. Chronic exposure in experimental animal inhalation studies have shown a range of dose dependent lung inflammation and cellular changes in the lung and there are also diesel exhaust immunological effects. Based upon human and laboratory studies, there is considerable evidence that diesel exhaust is a likely carcinogen. Human epidemiological studies demonstrate an association between diesel exhaust exposure and increased lung cancer rates in occupational settings."

25.     DPM contains the following substances in solid form, all of which are on the RCRA list of hazardous substances:  arsenic, cadmium, nickel, inorganic lead, antimony compounds, beryllium compounds, cobalt compounds, manganese compounds, mercury compounds, phosphorus, and selenium compounds. Although initially transported by a gas, these materials are solids which carry volatile organic compounds (VOCs) and other toxic substances (in liquid or semi-liquid form) that are adsorbed onto the particles' surfaces.  DPM is both a solid waste and a hazardous waste within the meaning of RCRA, 42 U.S.C. § 6903(5), (27).

26.     The RCRA hazardous wastes which the railyards are allowing to be disposed of through their operations have well-documented, serious effects on human health and the environment.  The following bullets are EPA's assessment of some of the human health impacts that result from some of the constituents of DPM:

- Lead.  "Lead is a very toxic element, causing a variety of effects at low dose levels.  Brain damage, kidney damage, and gastrointestinal distress are seen from acute exposure to high levels of lead in humans.  Chronic exposure to lead in humans results in effects on the blood, central nervous system, blood

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

pressure, kidneys, and Vitamin D metabolism.  Children are particularly
sensitive to the chronic effects of lead, with slowed cognitive development,
reduced growth and other effects reported.  Reproductive effects, such as
decreased sperm count in men and spontaneous abortions in women, have
been associated with high lead exposure.  The developing fetus is at
particular risk from maternal lead exposure, with low birth weight and
slowed postnatal neurobehavioral development noted."[1]

- Arsenic.  "Acute high-level inhalation exposure to arsenic dust or fumes has
  resulted in gastrointestinal effects (nausea, diarrhea, abdominal pain); central
  and peripheral nervous system disorders have occurred in workers acutely
  exposed to inorganic arsenic.  Chronic inhalation exposure to inorganic
  arsenic in humans is associated with irritation of the skin and mucous
  membranes.  Chronic oral exposure has resulted in gastrointestinal effects,
  anemia, peripheral neuropathy, skin lesions, hyperpigmentation, and liver or
  kidney damage in humans.  Inorganic arsenic exposure in humans, by the
  inhalation route, has been shown to be strongly associated with lung cancer,
  while ingestion of inorganic arsenic in humans has been linked to a form of
  skin cancer and also to bladder, liver, and lung cancer.  EPA has classified
  inorganic arsenic as a Group A, human carcinogen."[2]

- Cadmium.  "The acute effects of cadmium in humans through inhalation
  exposure consist mainly of effects on the lung, such as pulmonary irritation.
  Chronic inhalation or oral exposure to cadmium leads to a build-up of
  cadmium in the kidneys that can cause kidney disease.  Cadmium has been
  shown to be a developmental toxicant in animals, resulting in fetal
  malformations and other effects, but no conclusive evidence exists in

---

[1] *See* http://www.epa.gov/ttn/atw/hlthef/lead.html.
[2] *See* http://www.epa.gov/ttn/atw/hlthef/arsenic.html.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

humans... EPA has classified cadmium as a Group B1, probable human carcinogen."[3]

- Nickel. "Nickel dermatitis, consisting of itching of the fingers, hands, and forearms, is the most common effect in humans from chronic skin contact with nickel. Respiratory effects have also been reported in humans from inhalation exposure to nickel. Human and animal studies have reported an increased risk of lung and nasal cancers from exposure to nickel refinery dusts and nickel subsulfide... EPA has classified nickel refinery dust and nickel subsulfide as Group A, human carcinogens, and nickel carbonyl as a Group B2, probable human carcinogen."[4]

- Antimony. "Acute exposure to antimony by inhalation in humans results in effects on the skin and eyes. Respiratory effects, such as inflammation of the lungs, chronic bronchitis, and chronic emphysema, are the primary effects noted from chronic exposure to antimony in humans via inhalation."[5]

- Beryllium. "Acute inhalation exposure to high levels of beryllium has been observed to cause inflammation of the lungs or acute pneumonitis (reddening and swelling of the lungs) in humans; after exposure ends, these symptoms may be reversible. Chronic inhalation exposure of humans to beryllium has been reported to cause chronic beryllium disease (berylliosis), in which granulomatous lesions (noncancerous) develop in the lung... EPA has classified beryllium as a Group B1, probable human carcinogen."[6]

- Cobalt. "Acute exposure to high levels of cobalt by inhalation in humans and animals results in respiratory effects, such as a significant decrease in ventilatory function, congestion, edema, and hemorrhage of the lung. Respiratory effects are also the major effects noted from chronic exposure to

---

[3] See http://www.epa.gov/ttn/atw/hlthef/cadmium.html.
[4] See http://www.epa.gov/ttn/atw/hlthef/nickel.html.
[5] See http://www.epa.gov/ttn/atw/hlthef/antimony.html.
[6] See http://www.epa.gov/ttnatw01/hlthef/berylliu.html.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

cobalt by inhalation, with respiratory irritation, wheezing, asthma, pneumonia, and fibrosis noted. Cardiac effects, congestion of the liver, kidneys, and conjunctiva, and immunological effects have also been noted in chronically-exposed humans."[7]

- Manganese. "Chronic exposure to high levels of manganese by inhalation in humans may result in central nervous system (CNS) effects. Visual reaction time, hand steadiness, and eye-hand coordination were affected in chronically-exposed workers. A syndrome named manganism may result from chronic exposure to higher levels; manganism is characterized by feelings of weakness and lethargy, tremors, a mask-like face, and psychological disturbances. Respiratory effects have also been noted in workers chronically exposed by inhalation. Impotence and loss of libido have been noted in male workers afflicted with manganism."[8]

- Mercury. "Mercury exists in three forms: elemental mercury, inorganic mercury compounds (primarily mercuric chloride), and organic mercury compounds (primarily methyl mercury). All forms of mercury are quite toxic, and each form exhibits different health effects. Acute exposure to high levels of elemental mercury in humans results in central nervous system effects such as tremors, mood changes, and slowed sensory and motor nerve function. Chronic exposure to elemental mercury in humans also affects the [central nervous system], with effects such as erethism (increased excitability), irritability, excessive shyness, and tremors... Acute exposure to inorganic mercury by the oral route may result in effects such as nausea, vomiting, and severe abdominal pain. The major effect from chronic exposure to inorganic mercury is kidney damage... Acute exposure of humans to very high levels of methyl mercury results in [central nervous

---

[7] See http://www.epa.gov/ttn/atw/hlthef/cobalt.html.
[8] See http://www.epa.gov/ttn/atw/hlthef/manganes.html.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

system] effects such as blindness, deafness, and impaired level of consciousness. Chronic exposure to methyl mercury in humans also affects the central nervous system with symptoms such as paresthesia (a sensation of pricking on the skin), blurred vision, malaise, speech difficulties, and constriction of the visual field. Methyl mercury exposure, via the oral route, has led to significant developmental effects. Infants born to women who ingested high levels of methyl mercury exhibited mental retardation, ataxia, constriction of the visual field, blindness, and cerebral palsy."[9]

- Selenium. "Hydrogen selenide is the most acutely toxic selenium compound. Acute exposure to elemental selenium, hydrogen selenide, and selenium dioxide by inhalation results primarily in respiratory effects, such as irritation of the mucous membranes, pulmonary edema, severe bronchitis, and bronchial pneumonia. Epidemiological studies of humans chronically exposed to high levels of selenium in food and water have reported discoloration of the skin, pathological deformation and loss of nails, loss of hair, excessive tooth decay and discoloration, lack of mental alertness, and listlessness… EPA has classified elemental selenium as a Group D, not classifiable as to human carcinogenicity, and selenium sulfide as a Group B2, probable human carcinogen."[10]

**B.     The Railyards Emit Tons Of Diesel Particulate Matter Each Year.**

27.     Defendants' railyards, and each of them, emit tons of DPM per year into the air. According to CARB, in 2005 these railyards emitted, collectively, over 160 tons of DPM.[11] As commerce at the ports of Los Angeles and Long Beach picks up, these numbers will likely be exceeded.

---

[9] See http://www.epa.gov/ttn/atw/hlthef/mercury.html; see also http://www.epa.gov/hg/effects.htm.
[10] See http://www.epa.gov/ttn/atw/hlthef/selenium.html.
[11] See http://www.arb.ca.gov/railyard/hra/hra.htm

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

28.     Defendants have allowed and are allowing the DPM described herein to be discharged into the air, from which it falls onto the ground and water nearby, and is re-entrained into the atmosphere by the wind, passing vehicles and other methods.

**C.     Plaintiffs' Members Are Injured By And At Risk From Defendants' Railyards.**

29.     Members of Plaintiffs' organizations live, work, travel and recreate near the railyards that are the subject of this action, and breathe and are otherwise exposed to DPM emanating from Defendants' property.

30.     CARB has produced studies of the extra cancer risk caused in railyard-adjacent communities as a result of railyard operations. These studies can be found at http://www.arb.ca.gov/railyard/hra/hra.htm. Using the relatively generous metric of an excess cancer risk of 10 in a million, the CARB studies found that over 1.8 million Californians are at elevated risk because of railyard operations.

31.     Here is the CARB breakdown by railyard at the 10 in a million excess risk level:

| | |
|---|---|
| UP Dolores: | 309,000 |
| UP Commerce: | 187,000 |
| UP Roseville: | 140,000 |
| UP Oakland: | 130,000 |
| UP LATC: | 96,000 |
| UP Colton: | 60,000 |
| UP Industry: | 57,000 |
| UP Stockton: | 19,600 |
| UP Mira Loma: | 7,900 |
| | |
| BNSF Hobart: | 552,000 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | |
|---|---|
| BNSF San Bernardino: | 187,600 |
| BNSF Commerce: | 32,100 |
| BNSF Stockton: | 17,000 |
| BNSF Watson: | 12,600 |
| BNSF Richmond: | 6,200 |
| BNSF Barstow: | 6,100 |

**D.     Control Measures Are Available To Reduce DPM At Railyards.**

32.     The injuries and potential injuries to Plaintiffs' members are redressable by existing technology.  There are control measures now available that would substantially reduce the levels of DPM emitted from Defendants' railyards in California or reduce exposure to DPM.  These include:

- Use of cleaner locomotives.
- Electrification of major rail lines.
- Use of cleaner yard equipment, including cargo handling equipment, yard hostlers and cranes.
- Plug-in electrification for all transportation refrigeration units.
- Locomotive idling limited to 15 minutes or less.
- No-idle zones for locomotives within 50 feet of sensitive receptors and residential areas.
- Site configuration to relocate high pollution areas away from sensitive receptors such as schools and homes.
- Health protective buffers between residential areas and the railyards.
- Filtration systems for homes and buildings in high health risk areas.
- Enhanced truck, locomotive and equipment inspections to ensure that required pollution levels are being achieved.

1

**RCRA**

2     33.    RCRA provides for comprehensive regulation of solid and hazardous

3  wastes to prevent threats to human health and the environment.  In enacting

4  RCRA, Congress recognized that "disposal of solid waste and hazardous waste in

5  or on the land without careful planning and management can present a danger to

6  human health and the environment," and that inadequate control of hazardous

7  waste management in particular "will result in substantial risks to human health

8  and the environment." 42 U.S.C. § 6901(b)(2), (b)(5).  Congress declared that

9  hazardous waste "should be treated, stored or disposed of so as to minimize the

10  present and future threat to human health and the environment," *id.* § 6902(b); *see*

11  *also id.* § 6902(a)(3) (establishing the statutory purpose of "prohibiting future open

12  dumping on the land and requiring the conversion of existing open dumps to

13  facilities which do not pose a danger to the environment or to health"), *id.*

14  § 6902(a)(4) (establishing the statutory purpose of "assuring that hazardous waste

15  management practices are conducted in a manner which protects human health and

16  the environment").

17     34.    In 1984, Congress amended RCRA to allow private persons to bring

18  suit to abate certain hazards caused by the mismanagement of solid or hazardous

19  waste.  Specifically, section 7002(a)(1)(B) of RCRA, added to RCRA by the

20  Hazardous and Solid Waste Amendments of 1984, P.L. 98-616, 98 Stat. 3221,

21  Title IV, § 401, and codified at 42 U.S.C. § 6972(a)(1)(B), authorizes private

22  persons to commence civil actions "against any person, . . . including any past or

23  present generator, past or present transporter, or past or present owner or operator

24  of a treatment, storage, or disposal facility, who has contributed or who is

25  contributing to the past or present handling, storage, treatment, transportation, or

26  disposal of any solid or hazardous waste which may present an imminent and

27  substantial endangerment to health or the environment." 42 U.S.C.

28  § 6972(a)(1)(B).  Liability under this provision is joint, several, and strict.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## FIRST CLAIM FOR RELIEF

[RCRA, 42 U.S.C §§ 6901 et seq]

35.    Plaintiffs re-allege and incorporate herein by reference the allegations in paragraphs 1 through 34, inclusive, of this Complaint.

36.    As alleged herein, Defendants are persons who have contributed to and are contributing to the handling, storage, treatment, transportation or disposal of solid or hazardous waste that may present an imminent and substantial endangerment to health or to the environment, and have been, are, and will be violating RCRA by their failure to limit or control the amount of DPM generated on and by the railyards described herein.

37.    DPM is created by Defendants' railyard operations.

38.    DPM is comprised of solid particles that are part of the exhaust from diesel engines.  DPM from the railyards is transported by wind and air currents onto the land and water near the railyards, and is inhaled by people both directly and after the particles have fallen to the earth and then have been re-entrained into the air by wind, air currents and passing vehicles.

39.    DPM contains the following substances in solid form, all of which are on the RCRA list of hazardous substances:  arsenic, cadmium, nickel, inorganic lead, antimony compounds, beryllium compounds, cobalt compounds, manganese compounds, mercury compounds, phosphorus, and selenium compounds. Although initially transported by a gas, these materials are solids which carry VOCs and other toxic substances (in liquid or semi-liquid form) that are adsorbed onto the particles' surfaces.  DPM is both a solid waste and a hazardous waste within the meaning of RCRA, 42 U.S.C. § 6903(5), (27).

40.    Without relief from this Court, injury to Plaintiffs' members as alleged herein will continue.  That injury is redressable by, among others, the control measures described above.

41.     Pursuant to 42 U.S.C. § 6972(a), Plaintiffs are entitled to temporary, preliminary and permanent injunctive relief against Defendants, and each of them, to abate the RCRA violations described herein.

## SECOND CLAIM FOR RELIEF

### [DECLARATORY JUDGMENT, 28 U.S.C. §§ 2201-02]

42.     Plaintiffs re-allege and incorporate herein by reference the allegations in paragraphs 1 through 41, inclusive, of this Complaint.

43.     An actual and present controversy exists as between Plaintiffs and Defendants as to the allegations contained herein . Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Plaintiffs are entitled to a judgment declaring that Defendants, and each of them, have contributed and/or are contributing to the past and/or present handling, storage, treatment, transportation and/or disposal of solid or hazardous waste containing DPM that may present an imminent and substantial endangerment to health and/or to the environment.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray for relief as follows:

1.     For a judgment declaring that Defendants, and each of them, have contributed and/or are contributing to the past and/or present handling, storage, treatment, transportation and/or disposal of solid or hazardous waste containing diesel particulate matter that may present an imminent and substantial endangerment to health and/or to the environment.

2.     For temporary, preliminary and permanent relief ordering Defendants, and each of them, to do the following:

      a. Investigate the present amount, fate and transport of diesel particulate matter originating from their California railyards described herein;

      b. Remediate the effects of diesel particulate matter emissions from their California railyards on the surrounding neighborhoods;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

c. Abate the threat of diesel particulate matter pollution from their California railyards; and

d. Take any additional actions that may be necessary to remedy the endangerment to health and/or the environment from diesel particulate matter associated with their California railyards.

3. For an order requiring Defendants to pay Plaintiffs' reasonable attorneys' feees, expert witness fees, and costs incurred in prosecuting this action, pursuant to 28 U.S.C. § 2412 and 42 U.S.C. §6972(e); and

4. For such other and further relief as the Court may deem just and proper.

Dated:   October 18, 2011          Respectfully submitted,

By: _____

DAVID PETTIT
MELISSA LIN PERRELLA
MORGAN WYENN
NATURAL RESOURCES DEFENSE
COUNCIL

*Attorneys for Plaintiffs* Center for Community Action & Environmental Justice, East Yard Communities for Environmental Justice, and Natural Resources Defense Council, Inc.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV11- 8608 SJO (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
David Pettit, SBN 67128
Melissa LinPerrella, SBN 205019
Adriano Martinez, SBN 237152
Morgan Wyenn, SBN 270593
NRDC, 1314 Second Street, Santa Monica, CA 90401

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Center For Community Action & Environmental Justice, East Yard Communities For Environmental Justice, and Natural Resources Defense Council, Inc. <br><br> PLAINTIFF(S) <br><br> v. <br><br> Union Pacific Corporation, Burlington Northern Santa Fe, LLC and BNSF Railway Company <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV11-8608-SJO(SSx) <br><br> **SUMMONS** |
|---|---|

TO:      DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, __DAVID PETTIT_____, whose address is __1314 Second Street, Santa Monica, 90401_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __October 18, 2011_____

By: _____Nancy Dinn_____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Center For Community Action & Environmental Justice, East Yard Communities For Environmental Justice, and Natural Resources Defense Council, Inc. | Union Pacific Corporation, Burlington Northern Santa Fe, LLC and BNSF Railway Company |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| David Pettit, Melissa Lin Perrella, Adriano Martinez, Morgan Wyenn NRDC, 1314 Second St., Santa Monica, CA 90401 (310) 434-2300 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No        ☐ **MONEY DEMANDED IN COMPLAINT:** $ 0.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
RCRA, 42 U.S.C. §§ 6901 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | PERSONAL PROPERTY | ☐ 510 Motions to | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | Vacate Sentence Habeas Corpus | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | IMMIGRATION | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☑ 893 Environmental Matters | REAL PROPERTY | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11-8608

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Natural Resources Defense Council, Inc. -- Los Angeles County<br>East Yard Communities for Environmental Justice -- Los Angeles County<br>Center For Community Action & Env Justice -- Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Union Pacific Corporation -- Los Angeles County<br>Burlington Northern Santa Fe, LLC -- Los Angeles County<br>BNSF Railway Company -- Los Angeles County | Defendants operate in 23 states including California. |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

\* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date October 18, 2011

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |